**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ZEFERINO MENDEZ-GUTIERREZ,
                    *Petitioner,*

            v.

ALBERTO R. GONZALES, Attorney
General,
                    *Respondent.*

No. 04-72525

Agency No.
A75-301-863

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 15, 2006—San Francisco, California

Filed April 17, 2006

Before: J. Clifford Wallace, Michael Daly Hawkins, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Wallace

**COUNSEL**

Jonathan M. Kaufman, San Francisco, California, for the petitioner.

Peter D. Keisler, Linda S. Wendtland, Shelley R. Goad, U.S. Department of Justice, Washington, D.C., for the respondent.

**OPINION**

WALLACE, Circuit Judge:

Zeferino Mendez-Gutierrez petitions for review of the Board of Immigration Appeals' (Board) denial of his motion to reinstate his asylum application. The Board found that Mendez-Gutierrez had not established a prima facie case for asylum based on a well-founded fear of future persecution. We have jurisdiction pursuant to 8 U.S.C. § 1252(a). We deny the petition for review.

I

Mendez-Gutierrez entered the United States at San Ysidro, California, on December 1, 1989. On February 10, 1997, he

submitted an asylum application to the former Immigration and Naturalization Service. Mendez-Gutierrez stated that he was a member of the National Action Party (PAN) in Mexico and was persecuted by the Institutional Revolutionary Party (PRI), which was in power at the time.

Mendez-Gutierrez's asylum application was referred to an immigration judge, and he was served with a Notice to Appear. During the hearing Mendez-Gutierrez, who was represented by counsel, admitted his removability, withdrew his asylum application, and requested cancellation of removal. The immigration judge held Mendez-Gutierrez removable and statutorily ineligible for both cancellation of removal and voluntary departure. The immigration judge also denied Mendez-Gutierrez's request to reinstate the asylum application that he had previously withdrawn.

Mendez-Gutierrez appealed to the Board, arguing that the immigration judge abused her discretion in denying his request to reinstate the withdrawn asylum application. The Board dismissed the appeal, holding that, although the failure to consider the asylum application may have been error, it did not "materially affect the outcome of the case." According to the Board, Mendez-Gutierrez had not established prima facie eligibility for asylum because he had failed to demonstrate past persecution.

Mendez-Gutierrez then petitioned this court for review. In a published opinion, we granted the petition for review. *Mendez-Gutierrez v. Ashcroft*, 340 F.3d 865 (9th Cir. 2003). We first concluded that the Board did not abuse its discretion by requiring Mendez-Gutierrez to show prima facie eligibility for asylum before reopening his application, *id.* at 869-70, and upheld the Board's determination that Mendez-Gutierrez had not established past persecution. "We cannot conclude that the unspecified threats against Mendez-Gutierrez were sufficiently menacing to constitute past persecution, as we do not even know what the threats entailed. Nor do the occasional

incidents of detention and interrogation rise to the level of past persecution." *Id.* at 869 n.6 (citation omitted).

However, we held that the Board did abuse its discretion in not considering whether Mendez-Gutierrez had demonstrated a well-founded fear of future persecution, and we remanded so that the Board could consider it in the first instance. *Id.* at 869-70. We stated that "it appears doubtful that Mendez-Gutierrez will be able to establish a well-founded fear of future persecution" due to current country conditions in Mexico. *Id.* at 870. We referred to the 2000 election of PAN candidate Vicente Fox Quesada as president of Mexico. Fox has since remained in power. *See id.* Mendez-Gutierrez does not argue that he would be in danger were the PRI to return to power.

On remand, Mendez-Gutierrez filed a three-page brief. He supplied no affidavits or additional evidence regarding his asylum application. He also argued for the first time that the Notice to Appear was defective because the title of the signing officer was not disclosed in full. The Board dismissed the appeal, holding that Mendez-Gutierrez "ha[d] not met his burden to establish that he has a prima facie case of a well-founded fear of persecution for having been a member of the PAN party." The Board held that the other issues raised by Mendez-Gutierrez were "beyond the scope of the court's remand."

II

**[1]** The Attorney General has discretion to grant asylum to "refugees," defined as persons unable or unwilling to return to their country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101 (a)(42). "[A] respondent demonstrates prima facie eligibility for relief where the evidence reveals a reasonable likelihood that the statutory requirements for relief have

been satisfied." *Ordonez v. INS*, 345 F.3d 777, 785 (9th Cir. 2003).

An alien's well-founded fear must be both subjectively genuine and objectively reasonable. *Velarde v. INS*, 140 F.3d 1305, 1309 (9th Cir. 1998). "An alien satisfies the subjective component by credibly testifying that she genuinely fears persecution. The objective component requires a showing by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Korablina v. INS*, 158 F.3d 1038, 1044 (9th Cir. 1998) (internal quotation marks and citations omitted). "One way to satisfy the objective component is to prove persecution in the past . . . . The second way is to show a good reason to fear future persecution by adducing credible, direct, and specific evidence in the record of facts that would support a reasonable fear of persecution." *Ladha v. INS*, 215 F.3d 889, 897 (9th Cir. 2000) (internal quotation marks and citations omitted).

We review the Board's denial of a request to reinstate an asylum application for an abuse of discretion. *Mendez-Gutierrez*, 340 F.3d at 869. In the absence of an adverse credibility determination, Mendez-Gutierrez's statements must be taken as true. *See Navas v. INS*, 217 F.3d 646, 652 n.3 (9th Cir. 2000).

**[2]** Even taking all of the statements on the asylum application as true, Mendez-Gutierrez has failed to establish prima facie eligibility for asylum. According to the application, Mendez-Gutierrez was harassed and threatened by the federal police because of his political affiliation, though he could not remember the dates on which this harassment occurred. He also stated, "I was interrogated several times at my home and sometimes I would get taken to a desolate place and I would get questioned with rudeness." He declared that he believed he would be killed if he returned to Mexico, because the PRI "believes their actions and motives towards government are

correct and everyone should share their opinion and if not it becomes impossible to live in Mexico."

We previously held that this was insufficient to constitute past persecution. However, we remanded to allow Mendez-Gutierrez the opportunity to demonstrate a well-founded fear of future persecution. *Mendez-Gutierrez*, 340 F.3d at 870. The Board granted Mendez-Gutierrez time to file additional submissions on remand. Nonetheless, Mendez-Gutierrez provided no new argument whatsoever on remand. He merely "submit[ted] that the Board should remand the proceedings to the IJ with orders that respondent's asylum application be reinstated, and respondent scheduled for an evidentiary hearing on his asylum application." Thus, the Board based its determination of future persecution on the allegations contained in Mendez-Gutierrez's asylum application.

[3] Mendez-Gutierrez's vague and conclusory allegations of fear for his life if he returns to Mexico are clearly insufficient to support a finding of a well-founded fear of future persecution. Our case law has consistently required more. *See, e.g., Marcos v. Gonzales*, 410 F.3d 1112, 1115-16, 1119 (9th Cir. 2005) (holding fear of persecution well-founded where petitioner received dozens of death threats from a rebel militia); *Lim v. INS*, 224 F.3d 929, 935 (9th Cir. 2000) (holding fear of future persecution well-founded where petitioner "was threatened with death, he was followed, he appeared on a death list, and his colleagues who received similar threats were killed"); *Avetova-Elisseva v. INS*, 213 F.3d 1192, 1201 (9th Cir. 2000) (holding fear of future persecution well-founded where a pattern and practice of harassment created "a strong likelihood of persecution, possibly resulting in physical harm or death, if [petitioner] were forced to return to the Russian Federation") (internal quotation marks and citation omitted).

The Board did not abuse its discretion in determining that Mendez-Gutierrez's asylum application was insufficient to

satisfy prima facie the statutory requirements of subjectively genuine and objectively reasonable well-founded fear. Thus, we do not disturb this determination of the Board.

## III

While this case was on remand to the Board, Mendez-Gutierrez contended for the first time that the 1997 Notice to Appear was defective because the immigration officer who signed it wrote his title as "SAO" rather than as "Supervisory Asylum Officer." Mendez-Gutierrez argued that this abbreviation vitiated the requirements that "the DHS official who issues an NTA . . . both sign the form and identify his or her official capacity," although he conceded that he had "already pled to the charging document and conceded proper service." The Board did not address the argument. Instead it held: "Rather than address the reasons for the Ninth Circuit's remand, the respondent attempts to raise other issues that were not set out by the court. We find these matters are beyond the scope of the court's remand."

The Board's determination of purely legal questions is reviewed de novo. *Singh v. INS*, 213 F.3d 1050, 1052 (9th Cir. 2000). We thus review de novo whether the Board is bound by the scope of our remand.

**[4]** Whether the Board is bound by the scope of our remand appears to be a question of first impression for this and other circuits. However, we have repeatedly held, in both civil and criminal cases, that a district court is limited by this court's remand in situations where the scope of the remand is clear. In *United States v. Pimentel*, 34 F.3d 799, 800 (9th Cir. 1994) (per curiam), we had remanded Pimentel's sentence to the district court for a determination whether and to what extent to depart from the sentencing guidelines based on Pimentel's family circumstances. On remand, Pimentel argued for the first time that the district court erred by failing to group the counts of conviction when calculating the offense level. We

held that, "[i]n light of [the] clear evidence that the scope of our remand was limited to the single sentencing issue raised in Pimentel's prior appeal, the district court was without authority to reexamine any other sentencing issues on remand." *Id.; see also Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 883 (9th Cir. 2005) ("There is nothing in our prior decision that indicates that we issued an open remand. Rather, in remanding to the district court, our opinion contemplates a trial to resolve the only remaining genuine issue of material fact"); *Gospel Missions of Am. v. City of Los Angeles*, 419 F.3d 1042, 1051-52 (9th Cir. 2005) ("[T]he only equal protection argument we directed the district court to consider on remand was a challenge to [a particular statutory provision]. [Litigants] do[ ] not challenge the scope of the remand or argue that it should be allowed to raise other issues. . . . We therefore will not consider this equal protection argument") (citation omitted); *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1392 (9th Cir. 1995) ("In the subsequent appeal, the scope of review is narrowed to the limitations of the remand.") (internal quotations and citation omitted).

**[5]** We conclude there is no justification to treat the Board differently from the district court when we issue a limited remand. Both are operating pursuant to an order of this court requiring specific action. The Board, like the district court, has no power to expand our remand beyond the boundary ordered by our court. This is consistent with the orderly administration of justice. *See Mirchandani v. United States*, 836 F.2d 1223, 1226 (9th Cir. 1988) (holding district court bound by scope of court of appeals's remand where "there is some threatened disruption of the judicial system's orderly operation"). We therefore hold that the Board was bound by the scope of our remand to resolve the only remaining issue: "whether Mendez-Gutierrez has established a prima facie case of eligibility for asylum." *Mendez-Gutierrez*, 340 F.3d at 870.

We do not decide whether the Notice to Appear was valid and, if not, what the consequences should be. The proper

method for Mendez-Gutierrez to raise this argument would have been to file a motion to reconsider with the Board. A motion to reconsider seeks a new determination based on alleged errors of fact or law. *See* 8 U.S.C. § 1229a(c)(6). A contrary conclusion would allow petitioners carte blanche to raise any new issues on our remand, regardless of whether the issues could have or should have been raised before, and without giving the discretion to the Board that a motion to reconsider or to reopen would afford.

**[7]** The Board properly refused to go beyond our limited remand.

**PETITION DENIED.**